IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

In Re:

Crown Pointe Owners' Association, Inc,

    Debtor.

_____

D. Parker Sweet, as Trustee,

    Plaintiff,

v.

Joyce Jackson Moon, as Trustee of MEJ Trust, et al.,

    Defendants.

Case No. 23-11458

Adversary Case No. 24-1001

## MEMORANDUM OPINION AND ORDER DECIDING THRESHOLD ISSUE AND DENYING ALL OTHER PENDING MATTERS

A landowner sued the property owners' association of an adjacent subdivision for failing to maintain the subdivision's drainage system and obtained a large state court judgment. The property owners' association filed chapter 7 bankruptcy. Can the chapter 7 trustee, stepping into the shoes of the debtor, assess the subdivision homeowners to pay the tort judgment? For the reasons set out below, the court finds that the answer is no.

Procedural History

Crown Pointe Owners' Association, Inc. ("CPOA") filed chapter 7 bankruptcy in June 2023, and the court appointed D. Parker Sweet as the chapter 7 trustee. The trustee filed this adversary proceeding against all the Crown Pointe subdivision homeowners seeking a declaratory judgment that he can assess them to pay the tort claim filed in CPOA's bankruptcy.

He has filed a motion for summary judgment (doc. 43), which is currently pending. Some homeowners have filed motions to dismiss based on individual defenses.

The adversary proceeding came before the court for a status conference on February 27, 2024. The attorneys present in court (including the trustee and his counsel) agreed that the most expeditious way for the court to proceed would be to determine the threshold issue in this case – whether the trustee can assess the member homeowners of CPOA to pay a tort judgment – based on stipulated facts.

Following another status conference on March 26, 2024, the court entered an amended order (doc. 96) regarding Proposed Stipulated Facts entered on March 28, 2024. The court set a deadline for any party to object to the court deciding the threshold issue based on the proposed stipulation, and no party objected. The court also set a deadline for any party to object to the entry of a final order by this court, and no party objected. All parties have thus consented to the entry of a final order by this court. *See generally Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015).

In its amended order (doc. 96), the court stated that it "intends to decide the threshold issue of whether the trustee can issue a special assessment against the property owners to pay a tort claim without further hearings or oral argument based upon undisputed stipulated facts set out above." The court set all pending motions for status on June 4 to allow the court time to decide the threshold issue.

2

Findings of Fact

The court makes the following findings of fact based on the stipulated facts to which no party objected.

CPOA is the property owners' association for the Crown Pointe residential subdivision in Mobile, Alabama, which has twenty-one lots. A copy of the Declaration of Covenants, Conditions, Restrictions and Easements (hereinafter, "the Declaration") for the Crown Pointe subdivision was attached to the court's order (doc. 96) as Exhibit A. CPOA was incorporated under the laws of the State of Alabama in 1997, was operating at all times relevant to this dispute, and has never been legally dissolved. (*See* Articles of Incorporation, attached to the court's order (doc. 96) as Exhibit B).[1]

In July 2020, an adjacent landowner, William Carpenter, sued CPOA and several of the subdivision homeowners over drainage issues based on CPOA's alleged failure to maintain an easement and berm in the subdivision common area. (*See* complaint filed in case no. 2020-901477 in the Circuit Court of Mobile County, attached to doc. 96 as Exhibit C). Carpenter made tort claims of negligence, wantonness, trespass, and nuisance against CPOA (and others). After a jury verdict, the circuit court entered a money judgment (attached to doc. 96 as Exhibit D1) for Carpenter against CPOA for $116,000. Carpenter filed a motion for the state court to exercise its equitable authority and order CPOA to assess the Crown Pointe homeowners; the court denied that motion without opinion. (*See* motion (without attachments) and state court order denying same, attached collectively to doc. 96 as Exhibit D2).

---

[1] The Declaration refers to "Homeowners Association" instead of "Owners' Association," but there is no dispute that CPOA has always operated as "Crown Pointe Owners' Association" (the name under which it filed for chapter 7 bankruptcy in this court).

3

Case 24-01001    Doc 107    Filed 05/16/24    Entered 05/16/24 10:26:44    Desc Main
Document    Page 3 of 9

Carpenter's judgment is the only debt listed on CPOA's sworn schedules in the underlying bankruptcy. Carpenter has filed a proof of claim in the main bankruptcy case for $139,375.91, which includes postjudgment interest and court costs. Although no bar date has been set, at this point Carpenter's proof of claim is the only one filed in the main case. In this adversary proceeding, the trustee seeks a declaratory judgment against the homeowners in the Crown Pointe subdivision, asking this court to declare that he has the power to issue a special assessment against them to satisfy the Carpenter judgment.

Conclusions of Law

Under Article VI, Section 6.1 of the Declaration, each Crown Pointe property owner is "automatically . . . a Member of the Association." Article VII of the Declaration governs assessments and states in relevant part:

> 7.1 <u>Creation of the Lien and Personal Obligations for Assessments</u>. The Developer, for each Lot owned within the Property, hereby covenants, and each Owner of any Lot by acceptance of a deed therefor, whether or not it shall be expressed in such deed, is deemed to covenant and agree to pay to the Association:
>
>> i) annual assessments or charges to maintain the Common Property and to pay other costs incurred by the Association for the purposes herein defined; and
>>
>> ii) special assessments for capital improvements to the Common Property, repairs or additional expenses which exceed the budgeted amount of the annual assessment, such assessments to be established and collected as hereinafter provided.
>
> 7.2 <u>Insurance</u>. . . .
>
> 7.3 <u>Use/Purpose of Annual Assessment</u>. The annual assessment levied by the Association shall be used exclusively for the maintenance, repair, replacement, beautification, landscaping and operation of the Common Property, insurance (as above described) and, if any: Property signage and lighting, street lighting (not

4

Case 24-01001   Doc 107   Filed 05/16/24   Entered 05/16/24 10:26:44   Desc Main
Document    Page 4 of 9

> maintained by public utility company); and such other expenses related thereto as deemed necessary.
>
> 7.4 <u>Special Assessments for Capital Improvements Upon Common Property</u>. In addition to the annual assessments, the Association may levy, in any assessment year, a special assessment applicable to that year <u>only for the purpose of defraying, in whole or in part, the cost of any construction, reconstruction, repair or replacement of a capital improvement upon the Common Property</u>, including fixtures and personal property relating thereto, provided that any such assessment shall have the assent of fifty-one percent (51%) of the votes cast at a meeting of the Members specifically called for such purpose and provided that a quorum of Members is present at such meeting.

(Emphasis added). The Declaration defines "Common Property" as "those areas of land shown on the recorded plat of the Property not shown as individual Lots but shown as 'Detention & Planting Area', 'Detention Area' [and] 'Common & Detention Area . . . ." It further states that each owner has "an undivided 1/21st interest in and to the Common Property . . . ."

The easement and berm at issue in the Carpenter suit are part of the Common Property, and the court accepts for purposes of this order the trustee's position that CPOA was responsible for "maintaining the easement and berm to prevent any damage to any other residence." (*See* compl., doc. 1, at ¶43). CPOA presumably could have issued annual assessments to maintain the easement and berm in the first place. But the trustee's argument that the individual Crown Pointe homeowners can now be assessed for a tort judgment against CPOA based on CPOA's failure to maintain the easement and berm is not supported by the plain language of the Declaration. *See Ex parte Cohen*, 988 So. 2d 508, 514 (Ala. 2008) (courts must look to the plain language of a contract when attempting to discern its purpose); *see also Boyd v. Mills*, 337 So. 3d 1196, 1198 (Ala. 2021); *Lynd v. Marshall Cnty. Pediatrics, P.C.*, 263 So. 3d 1041, 1048-49 (Ala. 2018); *First Baptist Church of Lillian v. Church Mut. Ins. Co.*, 645 F. Supp. 3d 1288, 1296 (S.D. Ala. 2022).

5

Case 24-01001    Doc 107    Filed 05/16/24    Entered 05/16/24 10:26:44    Desc Main
Document    Page 5 of 9

Neither the annual assessment nor special assessment provisions of the Declaration relate to tort claims against CPOA. The trustee does not contend that he can require an annual assessment to pay the Carpenter judgment; annual assessments are limited to "the maintenance, repair, replacement, beautification, landscaping and operation of the Common Property, insurance[, signage and lighting], and such other expenses related thereto as deemed necessary[,]" and does not encompass paying a tort judgment. And special assessments are limited to "Capital Improvements Upon Common Property[,]" *i.e.*, "the cost of any construction, reconstruction, repair or replacement of a capital improvement upon the Common Property . . . ." Paying a tort judgment by issuing a special (or annual) assessment is not mentioned anywhere in the Declaration. Article VII of the Declaration is not ambiguous and does not provide for the special assessment that the trustee wants to impose. *See, e.g.*, *Fairfield Place Homeowners Ass'n, Inc. v. Pipkin*, 161 So. 3d 1206, 1209 (Ala. Civ. App. 2013) (interpreting homeowners' association declaration according to its plain language).

Without an applicable provision of the Declaration, the homeowners are not liable for the POA's debts under ordinary corporate law. "[I]t is a universally accepted basic axiom of corporate law that a corporation's shareholders [the Crown Pointe property owners] are not personally liable for" the debts of the corporation [CPOA]. *See Davis v. Dorsey*, 495 F. Supp. 2d 1162, 1169 (M.D. Ala. 2007); *Ex parte AmSouth Bank of Alabama*, 669 So. 2d 154, 156 (Ala. 1995) ("A corporation is generally regarded as a legal entity separate from its directors, officers, and shareholders; therefore, those persons are generally not individually liable for the debts of the corporation."); *see also Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1313 (11th Cir. 2013) ("'individuals ordinarily are shielded from personal liability when they do business in a corporate form'") (citation omitted); *Childs v. Pommer*, 348 So. 3d 379, 393 (Ala.

6

2021); *Washburn v. Rabun*, 487 So. 2d 1361, 1365-66 (Ala. 1986). This is just as true in the context of a property owners' association. *See, e.g.*, *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 198 (Tex. 1995) ("a homeowners' association is a separate legal entity from its unit owners, just as a corporation is distinct from its shareholders"); *Stowe v. Edwards*, 331 So. 3d 24, 35 (Miss. Ct. App. 2021) (homeowners' association president not personally liable for association's violation of covenants).

The trustee cites *In re Westwood Community Two Association, Inc.*, No. 00-2041-BKC-PGH-A, 2000 WL 33963918 (Bankr. S.D. Fla. Oct. 30, 2000). There, the bankruptcy court held that a chapter 7 trustee of a debtor property owners' association could impose special assessments from the individual owners to pay claims against the debtor for age discrimination.

But the district court reversed that decision in *Unofficial Ad Hoc Committee for Westwood Community Two Association, Inc. v. Barbee*, No. 00-7616-CV-DMM (S.D. Fla. Nov. 25, 2002).[2] It stated that "[t]he [t]rustee succeeds to the interests held by the debtor [property owners' association] and can assert no rights and impose no duties beyond that provided for in the [d]ebtor's governing documents prior to the filing of the bankruptcy case." *See id.* at *5. After analyzing the applicable declaration language that – much like in this case – provided for assessments for "the operation, maintenance, and repair of" common areas, the district court concluded that the declaration's provisions "alongside the relevant caselaw makes it clear that, as per the contractual provisions, the [t]rustee's action [in making the assessment] was improper." *See id.* at *5-6. "It is impossible to conclude, based on the language of the contract, that the

---

[2] The court is confident that the trustee and his counsel did not intend to cite a reversed case. For whatever reason, the subsequent opinions are not reported or otherwise readily available except from the courts' CM/ECF websites.

terms [of the declaration related to the operation, maintenance, and repair of the common areas] can somehow be read together to include an assessment to satisfy a judgment obtained against the [debtor a]ssociation from individual residents." *See id.* at *7. On appeal, the Eleventh Circuit affirmed this holding:

> [T]he district court correctly concluded that Westwood's Declaration of Restrictions did not allow Westwood to collect special assessments to satisfy judgments from individual homeowners. The Trustee in bankruptcy has no greater rights than those provided for in the Declaration . . . . Because Westwood could not collect the special assessment outside of bankruptcy, the Trustee cannot collect the special assessment from individual homeowners to add to the bankruptcy estate. Thus, we affirm the district court's ruling regarding the Trustee's inability to collect the special assessment.

*See Westwood Cmty. Two Ass'n, Inc. v. Barbee*, No. 03-10180, at *5 (11th Cir. Aug. 20, 2004).

Finally, nonparty Crown Pointe West Homeowners' Association (a new association, not the debtor) and homeowner Janice Gollotte produced documents in discovery. At the trustee's request, the court has considered those documents, which are attached to the court's amended order (doc. 96) as Exhibits E and F. Those documents primarily relate to CPOA's motivation for filing bankruptcy and do not change the fact that the Declaration does not permit a special assessment to pay tort claims.

Conclusion

To the extent the court has not specifically addressed any of the trustee's arguments made in his complaint, summary judgment filings, or other parts of the record, it has considered them and determined that they would not alter this result. Because the court's decision based on the agreed stipulated facts is determinative of the trustee's action for declaratory judgment, the court will enter a separate final judgment in accordance with this order.

8

The court also denies as moot all other pending matters filed in this adversary proceeding: docs. 43, 73, 75, 76, 81, 87, 89, 90, 97, 98, and 104.   The status hearing in this adversary proceeding set on June 4, 2024, is cancelled.

Dated:   May 16, 2024

／s／ Henry A. Callaway
HENRY A. CALLAWAY
U.S. BANKRUPTCY JUDGE